**In re Mehdi LOLOEE and Shokouh Loloee, Debtors.**

**GMAC Mortgage Corp., as Servicing Agent for Bankers Trust, et al., Appellant,**

v.

**Duke Salisbury, Chapter 7 Trustee; Mehdi Loloee; Shokouh Loloee; and Grocers Capital Co., Appellees.**

BAP No. CC–98–1778–KMoB.

Bankruptcy No. LA 97–46746–BR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1999.

Decided Nov. 2, 1999.

---

14. 705 F.2d 330 (8th Cir.1983).

15. *Id.* at 333.

16. *Id.*

Paula Stockland/Lawrence J. Buckley, The Buckley Firm, A.P.L.C., Mission Viejo, CA, for GMAC Mortgage Corp.

Richard K. Diamond, Danning, Gill, Diamond & Kollitz, LLP, for Grocers Capital Company.

Before KLEIN, MONTALI,[1] and BRANDT, Bankruptcy Judges.

## *OPINION*

KLEIN, Bankruptcy Judge.

We confront a backhanded resolution of a lien priority dispute incident to a sale of overencumbered property free and clear of liens. The issue is the legitimacy of the procedure used to assign a junior position to a residential mortgage lender who did not react fast enough to a motion to sell for less than the full amount of liens.

We conclude that due process was denied when a lien priority dispute was resolved in a sale motion without appropriate notice and without an adversary proceeding. Since the sale order was void to the extent that it purported to resolve the priority dispute, the appellant's motion under Federal Rule of Civil Procedure 60(b) should not have been denied. We REVERSE.

## FACTS

This is one of two related appeals arising from a sale of real property for less than the total amount of liens. The other appeal questions the substantive merits of the sale order. The narrow question here is whether relief should have been granted under Federal Rule of Civil Procedure 60(b)(4) on the premise that part of the original sale order was void for want of due process.

The parties actually litigating this appeal are GMAC Mortgage Corp. in its capacity as servicing agent for Bankers Trust, et al., regarding a home mortgage in a pool ("GMAC"[2]) and Grocers Capital Co. ("GCC"). GMAC and GCC dispute their respective lien priorities in proceeds of the sale.

The property in question is residential real property that the debtors scheduled as worth $605,000 and as subject to $2,023,500 in consensual secured claims in the following order of priority: first, $586,000 to appellant GMAC; second, $300,000 to a creditor who has evinced no interest in this appeal; and, third, $1,137,500, cross-collateralized, to appellee GCC.

It turns out, however, that the relative priorities of GMAC and GCC are disputed. Although the schedules say GCC is in third position, GCC recorded its interest before the GMAC mortgage. GMAC nevertheless contends that it is in first position because applicable nonbankruptcy law entitles it to be subrogated to an earlier lien that was satisfied and paid as part of the financing transaction that created the GMAC lien and, independently, because nonbankruptcy law provides that GCC's lien did not actually attach until two months after the GMAC lien. The dispute between GMAC and GCC has not been actually litigated.

GMAC obtained relief from stay so that it could foreclose. The order granting relief imposed the condition that the foreclosure sale not occur for about three months.

1. Hon. Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. For simplicity, "GMAC" refers to all entities that have held the note and deed of trust in question, including: GMAC as servicing agent for Bankers Trust; GMAC's successor, Wells Fargo Bank; Residential Funding Corp., GMAC's predecessor as servicing agent on a loan made in 1993 by Southern Pacific Thrift & Loan Assn., which, in turn is said to have paid off a loan originated in favor of Home Loan Funding, Inc. in 1991 and held at the time of the 1993 refinancing by Lomas Mortgage U.S.A. as successor to Texas Commerce Bank.

Within that time, the chapter 7 trustee made a motion to sell the property for $861,000 free and clear of liens and to avoid certain judgment liens based on a preliminary title report indicating that GCC was in first position. That sale motion led to two appeals.

The motion was filed May 18, 1998, with a hearing designated for twenty-two days later, June 9, 1998. The motion papers invoked a local rule that did not exist and announced that oppositions had to be in writing and filed at least eleven days before June 9, 1998, i.e., May 29, 1998.[3]

The notice of motion, which was mailed to the counsel who had prosecuted the relief from stay motion and to nobody in particular at Wells Fargo Bank (GMAC's successor) at an address in Los Angeles, merely announced that the price was $861,000, that the sale was to be free and clear of liens, and that liens would attach to proceeds. There was no allusion to the fact that GCC claimed to be in senior position.

Nor was the notice of motion served in the manner prescribed by local bankruptcy rule, which requires personal service when the notice of motion and motion is served twenty-two days before the designated hearing. C.D.Cal. Local Bankr.R. 9013–1(1)(f)(ii).

Neither the motion nor the declaration of the trustee, both of which did refer to the fact that GCC appeared to have the first-recorded lien, were served on GMAC's relief from stay counsel or sent to GMAC (or Wells Fargo Bank).

GCC initially opposed the sale as unauthorized on the basis that it would not benefit the estate, that GCC had not consented as required by 11 U.S.C. § 363(f)(2), and that the sale price would not exceed the aggregate of liens as required by 11 U.S.C. § 363(f)(3).

The trustee's incentive to sell the over-encumbered property lay in the fact that GCC was cross-collateralized on another property that might have equity for the estate. To the extent that the trustee could get GCC paid out of the proceeds of the sale of the residence, there would be additional equity in the other property. Hence, the trustee stood to gain if GCC's lien primed GMAC's lien.

The trustee made a deal with GCC to get the opposition withdrawn in exchange for a ruling specifying that GCC was in first position. The deal was contingent upon the court signing an order containing this language:

> 4. The proceeds of the sale of the Property shall be paid to consensual lienholders through escrow in accordance with and to the extent of, their legal priority and amount. This shall include, but not be limited to, payment in full of the senior lien of Grocers Capital Company, which had a payoff balance of $596,792.81 as of June 3, 1998.

The court signed the order without a hearing, on the day before the scheduled hearing, without making any independent determination, and without making findings of fact and conclusions of law.

Neither the motion nor the notice of motion suggested that the court would be determining specific lien priorities in connection with the motion. And, there having been no hearing, GMAC had no notice of the terms of the trustee's deal with GCC to craft an order that would effectively declare GCC to be in first position.

GMAC did not appeal the sale order. Instead, GMAC regarded the language of the sale order as ambiguous and not a binding determination of its lien priority. Accordingly, it demanded full payment from escrow, asserting that it held the first priority lien on the property. So did GCC.

---

**3.** C.D.Cal. Local Bankr.R. 111 was repealed effective March 15, 1998, and replaced by

C.D.Cal. Local Bankr.R. 9013–1.

The escrow and title companies refused to close the sale in the face of the conflict.

The trustee responded with an emergency motion for an order directing the escrow and title companies to close the sale of the property, which motion was heard on notice of several hours.

The court granted the emergency motion on July 23, 1998, and clarified the intended meaning of the above-quoted portion of the original sale order as follows:

> IT IS FURTHER ORDERED THAT Warranty Escrow shall distribute the proceeds of the sale as set forth in the June 9 Order, and specifically, that Grocers Capital Corporation will be paid off in full as first priority lienholder in the sale proceeds. Any remaining proceeds will be distributed in order of priority notwithstanding any demand exceeding the available funds.

There was an appeal from this July 23, 1998, order, which appeal was previously argued before another panel of the Bankruptcy Appellate Panel as BAP No. CC–98–1537–PKJ. Decision was deferred until after the decision on the instant appeal.

Our motions panel permitted the sale to close but stayed distribution of sale proceeds pending appeal. Thus, the liens of GMAC and GCC have attached to proceeds that are insufficient to pay both.

Meanwhile, GMAC filed the motion under Rule 60(b) that is the subject of the instant appeal.

GMAC argued: Federal Rule of Bankruptcy Procedure 7001(2) requires that lien priority disputes be resolved by adversary proceeding; this rule is a matter of due process that cannot be circumvented by sneaking the issue into a motion to sell property free and clear of liens; hence, the original sale order was void to the extent that it purported to determine priority of

liens and should, to that extent, be vacated under Rule 60(b)(4).

The bankruptcy court denied the motion. This appeal ensued.

## ISSUES

1. Whether the resolution of a lien priority dispute through a motion to sell property free and clear of liens without an adversary proceeding is consistent with due process.

2. Whether the notice given in this case satisfies due process.

## STANDARD OF REVIEW

A trial court's denial of a Rule 60(b) motion is reviewed for abuse of discretion. A court necessarily abuses its discretion when it refuses to set aside a void judgment. *Citicorp Mortgage, Inc. v. Brooks (In re Ex–Cel Concrete Co.),* 178 B.R. 198, 203 (9th Cir. BAP 1995); *Cossio v. Cate (In re Cossio),* 163 B.R. 150, 153–54 (9th Cir. BAP 1994). Whether a judgment is void is a question of jurisdictional law to be reviewed de novo. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich),* 229 B.R. 777, 779 (9th Cir. BAP 1999).

## DISCUSSION

The central question is whether GMAC had due process notice that its lien priority dispute with GCC would be resolved as part of the motion to sell. The appeal does not seek to unravel the sale. Nor is it asserted that GMAC did not have due process notice that the trustee proposed to sell property subject to its lien.[4]

### I

The procedural posture of the case requires us to focus on Rule 60(b)(4), which applies in bankruptcy. Fed.R.Bankr.P. 9024, *incorporating* Fed.R.Civ.P. 60.[5]

---

4. Thus, it does not matter that GMAC may have known of the existence of a motion to sell property.

5. Rule 9024 provides:
   Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsider-

Under Rule 60(b)(4), the court may relieve a party from a final judgment on the basis that the judgment is void.

### A

It is plain that the portion of the sale order that purported to determine lien priorities was erroneous in a number of respects.[6]

■ A motion procedure cannot be used to circumvent the requirement of an adversary proceeding. *Bear v. Coben (In re Golden Plan)*, 829 F.2d 705, 711–12 (9th Cir.1986). Rule 7001(2) explicitly requires an adversary proceeding to resolve the lien priority dispute between GMAC and GCC. Fed.R.Bankr.P. 7001(2).

Nor was service accomplished in accordance with Rule 9014, which requires that service be in the manner for service of a summons and complaint in an adversary proceeding. Fed.R.Bankr.P. 9014. When such service is done by mail on a corporation, addressing the mail to nobody in particular at the corporation does not satisfy the requirement of mailing a copy to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Fed.R.Bankr.P. 7004(b)(3).

Moreover, the movant did not comply with Rule 6004(c) by serving a copy of the motion on GMAC in its capacity as a party with a lien or other interest in the property to be sold. Fed.R.Bankr.P. 6004(c).

Rather, a mere notice of motion was directed to GMAC, which notice did not suggest that a lien priority dispute would be resolved.

Indeed, service did not even comply with the requirements of applicable local bankruptcy rules. The trustee's counsel mailed the purported notice twenty-two days before the designated hearing in violation of the requirement that such notice be mailed "not later than twenty-four (24) days before the hearing date designated in the notice." C.D.Cal. Local Bankr.R. 9013–1(1)(f)(ii).

■ Merely erroneous procedure and notice, however, will not suffice for Rule 60(b)(4) relief unless the circumstances cross over the line from mere error to error that violates the due process clause of the Fifth Amendment. *Owens–Corning Fiberglas, Inc. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir.1985); *Ex–Cel Concrete*, 178 B.R. at 203.

Thus, while the order may have been vulnerable to reversal for a variety of reasons,[7] voidness requires a greater degree of error.

### B

■ The notice that is required in order to satisfy the due process clause of the Fifth Amendment must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

---

ation of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.
Fed.R.Bankr.P. 9024.
  The advisory committee added: "For the purpose of this rule all orders of the bankruptcy court are subject to Rule 60 F.R.Civ. P." *Id.*, advisory committee's note.

6.  We assume (without deciding) that the sale cannot be upset and that all that is at stake is whether the GMAC–GCC lien priority dispute has or has not been resolved.

7.  We note that this appeal does not present such fairly-debatable issues as whether a lienor's silence, without more, constitutes "consent" for purposes of 11 U.S.C. § 363(f)(2). *Cf., Freightliner Mkt. Dev. Corp. v. Silver Wheel Freightlines*, 823 F.2d 362, 368–69 (9th Cir. 1987) (11 U.S.C. § 363(f)(2)); *Bell Rd. Inv. Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211 (9th Cir. BAP 1989) (11 U.S.C. §§ 1126 & 1129(a)(7)).

of the action and to afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ The purpose of such notice is to apprise the affected party of, and permit adequate preparation for, an impending hearing. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

■ If the notice is inadequate, then the order is void. *Center Wholesale*, 759 F.2d at 1448; *Ex–Cel Concrete*, 178 B.R. at 203.

### 1

The question, then, in the Rule 60(b)(4) motion is whether GMAC had notice reasonably calculated, under all the circumstances, to apprise it that the relative priority of its lien was at risk of being decided adversely as part of the impending hearing on the sale and had adequate time to prepare for the hearing.

It is plain that GMAC did not have such notice that its lien was in jeopardy in time to permit it to prepare for the hearing.

First, the notice of motion contained no mention of that aspect of the matter. Even if one were to assume that service was correct, the notice merely announced that there was a sale proposed for $861,-000, which was about $300,000 more than what GMAC was owed. A creditor in first position in such circumstances would have no reason to oppose the sale.

Moreover, the trustee's actual motion papers, which were not sent to GMAC, were, at best, ambiguous about the intention to preempt lien priority disputes. Although the trustee recited that a preliminary title report showed GCC in senior position, the papers did not suggest that any contest between GMAC and GCC would be conclusively resolved by the trustee's motion.

The response was said to be due ten days before the hearing. GMAC did not receive a copy of GCC's opposition in time to file any response before the deadline. Once the putative deadline passed, the court acted ex parte (i.e. without notice and without a hearing) and implemented GCC's deal with the trustee to obtain an order that was designed to preclude GMAC from establishing its priority.

Even then, the order was not clear. The reference to GCC's "senior" lien in the context in which there were three liens, two of which would be senior in some respect, is ambiguous. The language of the order, taken in the context of the law, was such that it was not irrational for GMAC to assume that the priorities were what they were under nonbankruptcy law and would continue to be honored.

Although GCC makes much of GMAC's failure to appeal the June 9, 1998, sale order, it was not until the July 23, 1998, order that the court clarified the original intent in the June 9, 1998, order to fix lien priorities. And that order was timely appealed.

While GMAC may have had notice of the sale that was sufficient to enable it to contest the sale (an issue that is not before us), there was, as a practical matter, no genuine opportunity for GMAC to contest the lien priority issue as part of the sale motion.

### 2

The procedural requirement in Rule 7001(2) that lien priorities be resolved by adversary proceeding has implications for due process that become important when a Rule 9014 contested matter is asked to do an adversary proceeding's job.

### a

The procedure that is regularly prescribed is one of the "circumstances" that needs to be taken into account under the *Mullane* "all of the circumstances" test for adequacy of notice for purposes of due process. *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. In particular, the notice that is associated with the standard procedure is pertinent.

■ Parties are entitled to presume that the court will comply with applicable rules of procedure and that they will receive the notice that is usually required.

This expectation of compliance with rules implies that there is a relation between deviations from required procedures and the nature of the notice that is needed for purposes of due process: the greater the deviation from prescribed procedure, the greater the quality and amount of notice needed in order to comply with due process.

One, then, must compare the notice that was actually given with the notice that would have been given if the rules of procedure had been followed. Whether the difference is enough to flunk basic due process requirements is, in the end, a matter of degree.

b

Here, the difference is the choice between an adversary proceeding under Rule 7001 and a motion under Rules 9013 and 9014.

One difference affecting notice is that a response to a summons and complaint in an adversary proceeding is not due until thirty days after the summons is issued. Fed.R.Bankr.P. 7012(a). In contrast, responses to motions are typically due sooner. In this instance, the response to the motion was due eleven days after notice was mailed.

Another difference affecting notice is that the defendant in an adversary proceeding must receive a copy of the complaint as part of service. Fed.R.Civ.P. 4(c)(1), *incorporated by* Fed.R.Bankr.P. 7004(a). In other words, the defendant receives a copy of the specific pleading requesting relief. In bankruptcy motion practice, a mere notice of motion can be sufficient with respect to a motion. Fed.R.Bankr.P.2002(a) & (c)(1).

8. GCC relies on the findings of fact and conclusions of law that the court supposedly entered on the Rule 60(b) motion to brand

To be sure, even the motion rules require that a holder of a lien be served a copy of a motion to sell free and clear of that lien. Fed.R.Bankr.P. 6004(c).

■ The message to be derived from these rules is that notice is to be taken particularly seriously when liens are being affected in bankruptcy. Holders of liens that may be adversely affected are entitled to unambiguous notice and an adequate opportunity to reflect and to respond.

3

The application of these principles compels the conclusion that GMAC was denied due process.

GMAC was not served a copy of the motion papers that arguably suggested that there may be a lien priority issue. Rather, it received only the notice of motion that was silent about lien priorities and that indicated a sale price that would enable GMAC to be paid in full if it were in first position.

Although GCC's written opposition to the sale might have alerted GMAC to the lien priority issue, that opposition was not filed until the last day to file opposition and was not received by GMAC until after the deadline to file its own written opposition.

Nor was there any practicable opportunity to interpose an oral opposition at the time set for the hearing. The court acted in advance of the time fixed for hearing and did not hold a hearing.

GMAC had no reason to suspect that lien priorities would be determined as part of the motion to sell property free and clear of liens. It was entitled to expect that the court would apply the pertinent rules of procedure.

Hence, GMAC was denied adequate notice and opportunity to prepare an adequate defense.[8]

GMAC's actions as intentional and, by inference, as determining that GMAC knew the lien priority would be decided in the sale

## II

GCC contends that the closing of the sale transaction altered its rights by terminating GCC's opportunity to litigate the trustee's entitlement to sell the property free and clear of liens. It says (and we agree) that its opposition to the sale was meritorious. Accordingly, it says that it would be inequitable to deprive GCC of the opportunity to oppose the sale.

The answer is twofold. First, GCC's activity in bargaining with the trustee to be declared to be in first lien position diminishes the equitable appeal of its argument.

Second, GCC's standing to oppose the sale depended, in large measure, on the possibility that GMAC's lien might be senior. Otherwise, GCC stood to be paid in full and would not have been in a position to prevent the sale.

Having exploited the trustee's procedural infelicities to its own advantage for the purpose of circumventing a potential lien priority dispute, GCC will not be heard to complain about being required to engage GMAC on the merits. GCC assumed the risk that the procedural problems would be so great as to deny due process.[9]

The sale has been closed and is not challenged in this appeal. The question before us is not whether GMAC had notice that the trustee proposed to sell property subject to its lien. Rather, the question is whether GMAC had due process notice that the lien priority issue with GCC would be resolved as part of the motion to sell. The sale proceeds are inadequate to pay the ultimate loser of the priority dispute more than a portion of its debt. Our answer is that GMAC did not receive due process notice that a lien priority dispute would, in plain violation of applicable rules of procedure, be resolved by the court as part of the motion to sell property.

If it turns out in the end that GMAC is senior to GCC, then the price of the procedural ploy will be measured by the inadequacy of the sale proceeds to cover the debt.

## CONCLUSION

The order denying the motion for reconsideration is REVERSED.

---

motion. The difficulty is that the copy that GCC included in its extracts of record does not indicate that it was actually entered by the court without modification. This makes a difference because the findings were prepared by GCC's counsel and reiterate distinctly accusatory facts stated in GCC's brief. If signed without modification by the court, they would be reviewed under the "special scrutiny" standard that applies when a court engages in "the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale." *Alvernaz Farms, Inc. v. Bank of Cal. (In re T.H. Richards Processing Co.)*, 910 F.2d 639, 643 n. 2 (9th Cir.1990). In short, the record is inadequate as to findings because of the omission of a copy of the document that was actually entered by the trial court.

9. GCC's resort to *ad hominem* argument further tends to confirm its participation in the stratagem. For example, GCC graced the record with an affidavit of one of its counsel (not of the firm that argued this appeal) in which he testified to his professional qualifications and rendered his "expert" opinion that GMAC's counsel violated ethical obligations under California Business & Professions Code § 6068 and California Rule of Professional Conduct 5–200 by presenting argument questioning the propriety of an order that materially exceeds the relief proposed in the notice of motion. Appellee's E.R. at 102–05. As Cicero said, "in hominem decendum est igitur, quum oratio argumentationem non habet." Pro Flacco § 10 (abuse the opponent when you have no basis for argument).