NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-11-1375-MkLaPa |
| ) | |
| PATRICIA SANTIAGO CHRISTENSEN,) | Bk. No. LA 08-10795-SK |
| ) | |
| Debtor. ) | Adv. No. LA 10-01289-SK |
| _____) | |
| ) | |
| KATHY DOCKERY, Chapter 13 ) | |
| Trustee; SAM LESLIE, Former ) | |
| Chapter 7 Trustee; GONZALEZ & ) | |
| ASSOCIATES, P.L.C., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| MARV S. BUSUEGO; REX B. ) | |
| CHRISTENSEN; OBOE HEALTH ) | |
| SERVICES, INC.; NORA A. ) | |
| BUSUEGO, ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Argued and Submitted on January 20, 2012
at Pasadena, California

Filed - February 2, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

---

Appearances:    Rosendo Gonzalez of Gonzalez & Associates, PLC
                argued on behalf of Appellants Kathy Dockery, Sam
                Leslie, and Gonzalez & Associates; Michael D.
                Franco argued on behalf of Appellees Marv Busuego,
                Nora Busuego, Rex Christensen and Oboe Health
                Services, Inc.

---

    [*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Before: MARKELL, LAFFERTY[**] and PAPPAS, Bankruptcy Judges.

In this appeal, chapter 13[1] trustee Kathy Dockery ("Dockery"), former chapter 7 trustee Sam Leslie ("Leslie") and the law firm that represented both Dockery and Leslie, Gonzalez & Associates (collectively, "Appellants"), appeal from the bankruptcy court's order: (1) dismissing an adversary proceeding against Debtor's deceased husband Rex B. Christensen ("Rex") and others (collectively, the "Defendants"); and (2) dismissing the underlying bankruptcy case. We MODIFY that portion of the order dismissing the adversary proceeding to a dismissal without prejudice and, as modified, AFFIRM the order.

**FACTS**

The essential facts are not in dispute. In July 2004, Debtor's husband Rex acquired legal title to an office building located at 1145 West 6th Street, Los Angeles, California ("Property"). The conveyance was by way of a grant deed ("Grant Deed") executed by the former owners, Lucas/Sixth Associates. Concurrently with this transaction, Debtor executed an interspousal transfer grant deed ("Interspousal Deed"), conveying to Rex whatever interest she otherwise might have claimed in the Property. Both the Grant Deed and the Interspousal Deed were recorded in the Official Records of Los Angeles County.

---

[**]Hon. William J. Lafferty, III, U.S. Bankruptcy Judge for the Northern District of California, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

Rex passed away in July 2005, but before he passed, in March 2005, he conveyed title to the Property to his wholly-owned corporation Oboe Health Services, Inc. ("Oboe"). The transfer was made by quitclaim deed ("Quitclaim Deed"), and was accompanied by an assignment by Rex of all of his shares of Oboe stock to his stepson, and Debtor's son, Marv Busuego ("Marv"). Marv did not record the Quitclaim Deed until January 13, 2010, after Debtor's bankruptcy filing.

Debtor filed her chapter 7 bankruptcy case on January 21, 2008, and she passed away on March 29, 2009, at the age of 81, before her case was closed. Notwithstanding her death and the apparent lack of any substantial assets, the Debtor's case has had a long and tortured history.

The tale begins in March 2008, when the Debtor converted her chapter 7 case to one under chapter 13. The apparent purpose of this conversion was an attempt to save her residence, or at least the equity in it.[2]

Debtor successfully confirmed a chapter 13 plan on December 31, 2008. Before she died in March 2009, Debtor made some plan payments. These stopped after her death. Dockery, however, who did not know of Debtor's death, used the lack of payments as a basis for a motion to reconvert the case to chapter 7. Unaware that Debtor had passed away, the bankruptcy court granted the reconversion motion on October 21, 2009.

Leslie was reappointed as chapter 7 trustee shortly after

---

[2]On her Schedule C listing of property claimed as exempt, Debtor claimed a homestead exemption in her residence, which Leslie did not oppose.

reconversion. On December 17, 2009, he filed an application to employ counsel, and the bankruptcy court granted this application on January 22, 2010. Shortly after the employment of counsel, on March 8, 2010, Leslie filed a complaint against the Defendants, consisting of Rex, Oboe, Marv and Marv's wife Nora Busuego ("Nora").

The claims set forth in the complaint all concerned the Property. After recounting the same history of transfers and conveyances outlined above, Leslie alleged that, prior to her bankruptcy filing, Debtor paid certain costs and expenses associated with the Property ("Payments"). According to Leslie, the Payments constituted both actual and constructively fraudulent transfers.[3] Leslie further alleged that the Interspousal Deed also constituted an actual and constructively fraudulent transfer.

Leslie next alleged that due to the validity of the fraudulent transfer claim regarding the Interspousal Deed, the January 2010 recordation of the Quitclaim Deed (from Rex to Oboe) constituted a postpetition transfer of estate property in contravention of § 549(a) and a violation of the automatic stay under § 362(a).

---

[3]In the process of denying Leslie's subsequent summary judgment motion, the bankruptcy court ruled in part that Leslie presented no evidence whatsoever to support his allegations regarding the existence of the Payments. Leslie did not even mention the Payments in his summary judgment motion. Nor did Appellants mention the Payments in their opening brief on appeal. Appellants thus have waived any issues in relation to the Payments. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002).

4

Based on all of the above-referenced alleged transfers, Leslie additionally asserted that he was entitled pursuant to § 550(a) to recover from the Defendants the value of the property transferred. Finally, Leslie alleged that the Debtor's Payments caused the Debtor to acquire an interest in the Property and that the bankruptcy court should grant Leslie declaratory relief recognizing the Debtor's interest in the Property.[4]

In the Spring of 2010, the Defendants (except for Rex) answered the Complaint, and Oboe filed a counterclaim against Leslie to quiet title to the Property.[5]

In August 2010, Leslie filed a motion for summary judgment. Leslie asserted in the motion that the undisputed facts established: (1) that Rex and the Debtor acquired the Property in July 2004; (2) that the July 2004 Interspousal Deed constituted a fraudulent transfer of the Debtor's interest in the Property; (3) that when Rex died intestate, Debtor inherited 50% or 100% ownership of the Property; (4) Leslie and his counsel did not learn of the Debtor's interest in the Property until January 2010; (5) Leslie did not learn of Debtor's interest in the Property earlier because the Defendants concealed the facts establishing that interest; and (6) at the time Marv recorded the Quitclaim Deed (from Rex to Oboe), the Property was property of

---

[4]Apparently, Appellants also have abandoned Leslie's declaratory relief claim. In addition to not mentioning the Payments, Appellants also have not mentioned anything regarding any interest Debtor acquired in the Property on account of or in exchange for the Payments. See footnote 3, supra.

[5]By stipulation between the parties, on June 16, 2010, Marv was substituted in place of Rex.

5

the Debtor's bankruptcy estate. According to Leslie, these facts established Leslie's entitlement to relief as a matter of law on his first through ninth claims for relief.

On October 12, 2010, after the August 31, 2010 discovery cutoff, the Defendants filed their opposition to Leslie's summary judgment motion. Among other things, the Defendants argued: (1) that Debtor never acquired any interest in the Property, and disclaimed any such interest in the Property by way of the Interspousal Deed; (2) before Rex died, he validly conveyed title to the Property to Oboe by way of the Quitclaim Deed; (3) the fact that the Quitclaim Deed was not recorded until January 2010 did not render the Quitclaim Deed ineffective as against Rex or his heirs; (4) Leslie's fraudulent transfer claims for relief were barred by the § 546(a) statute of limitations, which expired on January 22, 2010;[6] and (5) equitable tolling did not apply because Leslie was aware of the relevant facts concerning his

---

[6] § 546(a) provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of --

  (1) the later of --

    (A) 2 years after the entry of the order for relief; or

    (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

  (2) the time the case is closed or dismissed.

6

claims in February 2008.

With respect to equitable tolling, the Defendants pointed to evidence demonstrating that Leslie was aware in February 2008 (about 22 months before the statute of limitations ran) of all of the key facts underlying his fraudulent transfer claims. By February 4, 2008, Leslie had obtained a chain of title search, which reflected, among other things: (1) that Rex was still of record as the holder of legal title; (2) that Rex acquired title by way of the Grant Deed; (3) that, at the time Rex acquired title, Debtor contemporaneously conveyed any interest she otherwise might have acquired in the Property by way of the Interspousal Deed; and (4) that nothing in the chain of title report reflected Rex's conveyance of the Property to Oboe via the Quitclaim Deed. See Declaration of Brian Watkins ("Watkins Declaration") at ¶¶ 9 and exs. 34 and 35 thereto.[7]

In addition, Defendants further pointed out that, at the initial meeting of creditors held on February 21, 2008, Leslie, the Debtor and her counsel discussed Rex's acquisition of the Property in 2004, his conveyance of the Property to Oboe in 2005 shortly before his death, ownership of Oboe, the Interspousal Deed, and the unrecorded Quitclaim Deed. At various times during the meeting, Debtor and her counsel identified Marv, or Marv's

[7]We did not find the Watkins Declaration in Leslie's otherwise extensive excerpts of record. Rather, we obtained an electronic copy by accessing the bankruptcy court's electronic adversary proceeding docket available on PACER. We can take judicial notice of the filing and contents of the Watkins Declaration. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n. 9 (9th Cir. BAP 2003)(citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)).

7

wife Nora, or both, as the owners of Oboe.  Also at this meeting, Leslie and Debtor's counsel engaged in a colloquy that both sides have cited as evidence of their respective positions:

MR. LESLIE: Did you assert -- did you look into the property?

MR. WATKINS: Yes.

MR. LESLIE: And can you tell me what you two uncovered?

MR. WATKINS: It was made Rex Christensen's separate property in the summer of '04.

MR. LESLIE: All right.

MR. WATKINS: It was a business dealing with Mr. Christensen's [step] son. However, the deed to the company that was owned by the son was unrecorded because of an error in the transaction. I have given you a copy of the deed in '05, where the property was transferred from Rex Christensen to the company.

MR. LESLIE: I see it went from Patricia -- well, actually, to Rex. I see an unfiled deed dated December no, March 18th of 2005 --

MR. WATKINS: Right.

MR. LESLIE: -- to Oboe Health Services, Inc.

MR. WATKINS: Ms. Christensen never had an ownership interest in the property. The interspousal deed was filed during escrow prior to the actual vesting of Rex Christensen, just to make sure that this was recognized as a separate property transaction.

*   *   *

MR. LESLIE: Okay. I am going to need -- because, unfortunately, this isn't a recorded deed.

MR. WATKINS: I think it has been recorded. I just don't have the conformed copy.

MR. LESLIE: The [chain] of title doesn't have a (unintelligible) title on it.

MR. WATKINS: I know, but it takes a couple of weeks. We have been working on this nonstop –

MR. LESLIE: Yeah, but I can't record post -- I need to get –

8

MR. WATKINS: The grant deed -- the interspousal grant deed was recorded.

BY MR. LESLIE: Q. Right. I understand that. I understand that. . . .

Transcript of Official Recording of Meeting of Creditors (Feb 21, 2008) at 7:5-8:3, 9:8-21.

In sum, based on the above-referenced evidence, the Defendants asserted that no one concealed anything from Leslie, nor did anyone mislead him. Rather, Leslie knew in February 2008 the factual basis that he later relied upon to assert his fraudulent transfer claims.

On October 18, 2010, Leslie filed his response to the Defendants' opposition to his summary judgment motion. The first half of Leslie's response is dedicated to the equitable tolling issue. Leslie did not directly confront the Defendants' assertions that he was aware of the basis for his fraudulent transfer claims in February 2008. Instead, Leslie cited to a laundry list of alleged omissions, misstatements and related actions that according to Leslie demonstrated an intent to conceal or mislead, as follows:

• Debtor did not disclose in her Schedule B listing of personal property that, when Rex died intestate, she was Rex's sole heir.

• Debtor did not disclose in her Schedule B listing of personal property that she inherited an interest in the Property and in a lease between Rex as lessor and Oboe as lessee ("Rex/Oboe Lease").

• Debtor did not disclose in her Schedule G listing of executory contracts and unexpired leases: (1) the existence

9

of contracts concerning her residence in Pasadena or a parcel of property in Las Vegas; or (2) the existence of the Rex/Oboe Lease.

- Debtor did not disclose in Question 18 of her Statement of Financial Affairs ("Statement") that she served as an officer of Oboe within six years of her bankruptcy filing.

- Debtor incorrectly testified under oath that everything in her petition, in her schedules and in her Statement was correct.

- Even though Debtor's counsel talked about the July 2004 Interspousal Deed at the February 21, 2008 meeting of creditors, Debtor still testified at that meeting that she had not transferred any of her assets in the last four years.

- Debtor also should have disclosed, but failed to disclose, Rex's 2005 transfer of all of his Oboe stock to Marv.

- Debtor's counsel incorrectly stated at the February 21, 2008 meeting of creditors that the Quitclaim Deed (from Rex to Oboe) had been recorded.[8]

---

[8]A fair reading of the transcript from the meeting of creditors indicates Debtor's counsel was merely stating that he thought the Quitclaim Deed had been recently recorded, admittedly after the filing of Debtor's bankruptcy. See block quote from Feb. 21, 2008 Transcript, supra. Otherwise, there would not have been any reason for him to say "it takes a couple of weeks." Presumably, he meant that it would take a couple of weeks for the newly-recorded deed to show up on a chain of title report. See id. As it turned out, Debtor's counsel's statement was inaccurate regarding the recent recording of the Quitclaim Deed. But we do not see how this inaccuracy in any way affected the factual basis for any of Debtor's claims for relief. Even if we were to assume that Debtor's counsel meant to represent that the
(continued...)

10

- In a February 28, 2008 letter from Leslie to Debtor's counsel following up on the first meeting of creditors, Leslie reiterated his request that the Debtor produce a number of documents as discussed at the meeting, but Debtor never produced them as requested.

- Debtor's counsel, in a letter to Marv dated March 11, 2008, talked about the Trustee's apparent fraudulent transfer theory and about the need to convert Debtor's case to chapter 13 (because of a relief from stay motion filed by a creditor holding a first deed of trust against the Debtor's residence).

- Debtor never corrected the misstatements and omissions in her schedules and Statement.

- When Leslie's counsel wrote and called Marv in January 2010 to inquire about the Property, Marv finally recorded the Quitclaim Deed.

Based on all of the alleged misstatements and omissions, Leslie asserted that he "did not have all the required facts and documentation (as required by Rule 9011 of the Federal Rules of Bankruptcy Procedure) to timely commence the adversary proceeding prior to January 21, 2010." Response to Defendant's opposition to summary judgment motion (Oct. 18, 2010) at 15:9-16.

At about the same time that the parties were litigating over Leslie's summary judgment motion, Marv twice moved to vacate the

[8](...continued)
Quitclaim Deed was recorded before the Debtor's bankruptcy filing, we still don't see any connection between such a misstatement and Leslie's fraudulent transfer claims, which are based upon the Interspousal Deed and not on the Quitclaim Deed.

October 21, 2009 order reconverting Debtor's case from chapter 13 to chapter 7. As set forth in the motion to vacate, the bankruptcy court was not made aware before entry of the reconversion order that Debtor had passed away, and in light of the Debtor's death, her bankruptcy case should not have been reconverted on the basis of delinquent plan payments. Leslie opposed both motions to vacate. The bankruptcy court denied the first motion to vacate without prejudice, and the court ultimately set the hearing on the second motion to vacate for the same date as the summary judgment hearing, on November 1, 2010.

Neither of the parties have provided us with the transcript from the November 1, 2010 hearing, nor from the first continued hearing, apparently held on November 3, 2010. Consequently, we don't know precisely what transpired at either of these hearings. But we do have the transcript from the final hearing on the summary judgment motion and the second motion to vacate, held on December 15, 2010. This transcript, and the supplemental briefs that the parties filed just prior to the final hearing, give us some indication regarding what transpired at the first two hearings. Apparently, at the prior hearings, the bankruptcy court rejected Leslie's equitable tolling argument, concluded that Leslie's fraudulent transfer claims were barred by the statute of limitations, and directed the parties to file supplemental briefs regarding Leslie's claims alleging a postpetition transfer and violation of the stay.

At the December 15 hearing, the bankruptcy court ruled that Leslie's summary judgment motion would be denied. According to the bankruptcy court, Leslie's summary judgment papers consisted

12

of conclusory statements regarding his key allegations, but no evidence to support these allegations. In addition, the bankruptcy court reiterated several times its ruling that the fraudulent transfer claims were barred by the statute of limitations. As for Marv's second motion to vacate the order reconverting the case from chapter 13 to chapter 7, the bankruptcy court agreed with Marv that reconversion had been inappropriate in light of Debtor's death and Rule 1016. Accordingly, the bankruptcy court granted the motion to vacate the reconversion order, but warned the Defendants: "That doesn't mean, you know, the adversary proceeding disappears. I guess it will now be up to the Chapter 13 trustee to determine whether or not she wants to pursue it . . . ." Hr'g Tr. (Dec. 15, 2010) at 5:7-10.

The bankruptcy court entered orders denying Leslie's summary judgment motion and granting Marv's motion to vacate. After that, Dockery was reappointed as chapter 13 trustee, and she sought and obtained authority to retain Leslie's counsel as her special litigation counsel, so that she could continue to pursue the adversary proceeding. The bankruptcy court's employment order specified that compensation to pay for counsel's services would be awarded "only from the proceeds of any assets recovered for the estate by Gonzalez & Associates."

The adversary docket indicates that the adversary proceeding was for the most part dormant during the first half of 2011. However, in the underlying bankruptcy case, Marv filed a motion to dismiss. The operative document, Marv's second amended motion to dismiss chapter 13 case, was filed on April 26, 2011. In that

13

motion, Marv argued that, because Debtor had died, she no longer was eligible for chapter 13. Marv also claimed that Dockery as chapter 13 trustee was not authorized under the Bankruptcy Code to collect and reduce to money property of the estate because the specific provision authorizing chapter 7 trustees to do so, § 704(a)(1), did not apply to chapter 13 trustees, as set forth in § 1302(b)(1).

Dockery opposed the motion, contending that she did have authority under the Bankruptcy Code to prosecute the adversary proceeding. She further asserted that she should be allowed to prosecute the adversary proceeding because it was the estate's only asset and the only way creditors might receive a distribution from the case. Dockery alternately argued that, if the bankruptcy court were inclined to dismiss the case, the payment of all administrative claims should be made a condition to dismissal.

While Marv's dismissal motion was pending, Leslie and his counsel filed applications for compensation for the services they rendered on behalf of the estate. In his fee application, Leslie sought recovery of $24,261.00 in fees. Meanwhile, his counsel sought $110,186.00 in fees and $3,057.57 in expenses. Marv filed an opposition to the fee applications.

The hearing on the motion to dismiss and on the fee applications originally was set for May 12, 2011. It was then rescheduled for June 15, 2011 and later continued to June 29, 2011, in order to allow the parties to file supplemental briefs regarding what the bankruptcy court had identified as the dispositive issue: whether the estate had any interest in the

Property.[9]

The bankruptcy court ultimately granted the fee applications, but also granted the dismissal motion. The bankruptcy court declined to condition dismissal of the case upon payment of the awarded fees. Moreover, at the same time it ruled on the fee applications and the case dismissal motion, the bankruptcy court sua sponte dismissed the adversary proceeding. The bankruptcy court issued a lengthy tentative ruling, which it ultimately referenced and relied upon when it issued its final dismissal order. In deciding to dismiss the bankruptcy case, the bankruptcy court reasoned that there was no justification for the bankruptcy case to continue unless the adversary proceeding was viable. After reviewing the papers filed in support of and in opposition to the prior summary judgment motion, and after listening to the audio recordings from the prior summary judgment hearings, Judge Klein essentially adopted Judge Carroll's prior ruling that Leslie's fraudulent transfer claims were barred by § 546(a)'s statute of limitations. The bankruptcy court further ruled that, on the undisputed facts, the bankruptcy estate had no interest in the Property, so Leslie's claims based on § 362(a) and § 549(a) also must fail. Because Leslie's remaining claims all were predicated on the fraudulent transfer claims or on the § 549(a) claim, the bankruptcy court also rejected the remaining

[9]From the commencement of the bankruptcy case through the ruling on Leslie's summary judgment motion, the case and the adversary proceeding were assigned to Judge Ellen Carroll. However, shortly before the hearings on Marv's case dismissal motion and the fee applications, both the bankruptcy case and the adversary proceeding were administratively transferred to Judge Sandra Klein.

15

claims. Having determined that the adversary proceeding should be dismissed, the bankruptcy court concluded that the bankruptcy case also should be dismissed.

The bankruptcy court entered on July 12, 2011, its order dismissing both the bankruptcy case and the adversary proceeding. Leslie timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(H) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err when it dismissed the bankruptcy case?

2. Did the bankruptcy court err when it dismissed the adversary proceeding?

## STANDARDS OF REVIEW

We review the bankruptcy court's interpretation of statutes and rules as questions of law under the de novo standard of review. Heath v. Am. Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424, 428 (9th Cir. BAP 2005).

We review dismissal of a chapter 13 bankruptcy case for abuse of discretion. Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011). To ascertain whether the bankruptcy court abused its discretion, we apply a two-part test. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First we consider de novo whether the bankruptcy court identified the correct law to apply; if the court identified the correct law, we then determine under

16

the clearly erroneous standard whether the court's factual findings, and its application of those findings to the relevant law, were clearly erroneous.  Id.

We may affirm on any basis supported by the record.  Pac. Capital Bancorp, N.A. v. E. Airport Dev., LLC (In re E. Airport Dev., LLC), 443 B.R. 823, 828 (9th Cir. BAP 2011).

**DISCUSSION**

**A.  Dismissal of Bankruptcy Case**

**1.  Underlying law and procedure**

Under § 1307(c), the bankruptcy court may dismiss a bankruptcy case "for cause" if it is in the best interests of the estate and its creditors.  While the statute sets forth a nonexhaustive list of examples of "cause," courts have identified many others.  Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th ed., § 333.1, at ¶ 1 (Section Last Revised Jun. 16, 2004).  The for-cause determination is fact intensive, and each case tends to turn upon its own facts.  Id.

In this case, in the process of ruling on Marv's case dismissal motion, the bankruptcy court determined that the adversary proceeding was meritless, dismissed the adversary proceeding, and ruled that the bankruptcy case also should be dismissed.  According to the bankruptcy court, because the adversary proceeding was the only asset of the estate and because it was meritless, there was nothing for the trustee to administer.

As a matter of procedure, Appellants initially argue that the bankruptcy court improperly based its case dismissal on a merits disposition of the adversary proceeding that it should not

17

have been making in the context of a case dismissal motion. For purposes of this discussion, we will assume that it was improper for the bankruptcy court to fully and finally dispose of the merits of the adversary proceeding in this context.[10] Even so, under the circumstances presented here, the bankruptcy court properly could assess the worth of the adversary proceeding as part of its determination of whether the bankruptcy case should be dismissed. It is commonplace for bankruptcy courts to assess the worth of property and claims as part of the performance of their duties. For instance, bankruptcy courts routinely estimate the value of claims against the estate under § 502(c)(1). See, e.g., In re Texans CUSO Ins. Group, LLC, 426 B.R. 194, 204 (Bankr. N.D. Tex. 2010); Future Asbestos Claimants v. Asbestos Property Damage Committee (In re Federal-Mogul Global, Inc.), 330 B.R. 133, 154-55 (D. Del. 2005); see also First City Beaumont v. Durkay (In re Ford), 967 F.2d 1047, 1049 n.3 (5th Cir. 1992) (explaining that bankruptcy court claim estimation process under § 502(c)(1) is at heart an equitable and discretionary process).

Similarly, in the context of determining whether "cause" exists to grant relief from stay under § 362(d)(1), bankruptcy courts routinely assess the value or worth of estate assets. See, e.g., In re BLX Group, Inc., 419 B.R. 457, 469-71 (Bankr. D. Mont. 2009); In re Gibson, 355 B.R. 807, 811-12 (Bankr. E.D. Cal. 2006); see also Pistole v. Mellor (In re Mellor), 734 F.2d 1396, 1401 (9th Cir. 1984) (in the context of relief from stay motion

---

[10]We address the propriety of the dismissal of the adversary proceeding infra.

18

under § 362(d)(1), assessing the value of debtor's property and holding that equity cushion of 20% constituted adequate protection of secured creditor's interest in property).

Simply put, it is not at all unusual or improper for a bankruptcy court, in the context of a contested matter, to assess the value of an asset of the estate. Moreover, it was appropriate, here, for the bankruptcy court to assess the worth of the adversary proceeding in the process of determining whether cause existed to dismiss the Debtor's bankruptcy case under § 1307(c). Appellants have admitted that the adversary proceeding was the only asset of the bankruptcy estate that might lead to a distribution to creditors. Consequently, when the court determined that the adversary proceeding was essentially worthless, it became clear that cause existed to dismiss the bankruptcy case; there was no purpose to proceeding with the case when there were no assets to administer and no potential distribution available to the estate's creditors.

Appellants contend that the bankruptcy court nonetheless should have conditioned dismissal on payment of their fees. But this contention makes no sense. Appellants have articulated no viable source from which such fees could have been legally required to be paid as a prerequisite to case dismissal. In support of their position, Appellants primarily rely on Gill v. Hall (In re Hall), 15 B.R. 913, 915 (9th Cir. BAP 1981), but Hall is inapposite. There, the debtor was seeking voluntary dismissal of his chapter 7 case, and the Hall court noted that there was a possibility of a source of assets that might be recoverable and used to pay at least something in partial satisfaction of claims

19

against the estate. Id. at 917. Here, by contrast, the Debtor has passed away, and the estate has no reasonable prospect of recovering any assets to pay the Appellants' fees or any other estate claims.

Nor can Appellants credibly contend that they were not given an adequate opportunity to develop the dispositive facts and argue the key issues which the bankruptcy court relied on in concluding that the adversary proceeding essentially was worthless. The parties extensively briefed the application of equitable tolling, whether the Property was property of the Debtor's bankruptcy estate, and the efficacy/validity of the unrecorded Quitclaim Deed. Furthermore, the bankruptcy court held a number of hearings at which the parties were given the opportunity to orally argue these same points. All of this briefing and argument occurred after the close of discovery in the adversary proceeding, and occurred in contexts in which the parties had every incentive to present their best arguments and to present all of their evidence in support of these arguments.

In short, the bankruptcy court properly considered the worth of the adversary proceeding when it dismissed the underlying bankruptcy case.

**2. Accuracy of bankruptcy court assessment of adversary proceeding**

Even though we have held, above, that the bankruptcy court properly could assess the worth of the adversary proceeding in the process of ruling on Marv's case dismissal motion, Appellants also complain that the bankruptcy court's assessment was wrong. They contend that the bankruptcy court reached the wrong

20

conclusion regarding each of the key adversary proceeding issues the court considered: (1) the applicability of equitable tolling, (2) the efficacy/validity of the unrecorded Quitclaim Deed, and (3) whether the Property was property of the estate.  We will address each of these issues below.

### a.  Applicability of equitable tolling

The doctrine of equitable tolling may be applied to the limitations period set forth in § 546(a).  Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1384-85 (9th Cir. 1994).  Under the equitable tolling doctrine, when a litigant "'remains in ignorance of [a wrong] without any fault or want of diligence or care on his part,'" the limitations period will not run until the wrong is discovered.  Id. at 1384 (emphasis added) (quoting Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991)).  Ordinarily, whether equitable tolling applies in a particular case is a question of fact.  In re United Ins. Mgmt., 14 F.3d at 1385. However,

> when application of equitable tolling turns on the plaintiff's diligence in discovering a cause of action, courts may hold, as a matter of law, that the doctrine does not apply.  The extent to which a plaintiff used reasonable diligence is tested by an objective standard.  A district court may, therefore, grant a summary judgment motion if the uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraud but failed to file a timely complaint.

Id. (emphasis added and internal quotation marks omitted) (citing Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1417 (9th Cir. 1987)); see also Gardenhire v. IRS (In re Gardenhire), 209 F.3d 1145, 1151-52 (9th Cir. 2000) (expressing doubt as to whether IRS

21

successfully could invoke equitable tolling when it knew, thirteen days before the deadline ran, the facts it needed to know in order to timely file a proof of claim).

Here, the uncontroverted facts in the record demonstrate that Leslie knew the essentials of his fraudulent transfer claims in February 2008, but he did not commence the adversary proceeding until March 2010. We acknowledge that the March 2008 conversion of the case from chapter 7 to chapter 13 was a circumstance beyond Leslie's control that prevented him from pursuing the fraudulent transfer claims for a substantial period of time. However, the case was reconverted to chapter 7 in October 2009, and Leslie was reappointed as trustee shortly thereafter. Appellants offered no evidence explaining why Leslie could not have timely filed a complaint stating his fraudulent transfer claims between the time of his reappointment and the January 2010 deadline for filing such claims under § 546.[11]

In short, we see no error in the bankruptcy court's conclusion that equitable tolling would not apply to save the Trustee's fraudulent transfer claims.

###    b.    Property of the estate and the effect of the unrecorded Quitclaim Deed

Appellants argued in the bankruptcy court, and on appeal,

---

[11]In addition to proving reasonable diligence, Appellants needed to show that "some extraordinary circumstance stood in [their] way and prevented timely filing." Holland v. Florida, 130 S.Ct. 2549, 2562 (2010)(internal quotations omitted) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). It is doubtful that Appellants could establish the requisite extraordinary circumstance given the facts presented here, but in light of our holding on reasonable diligence, we need not reach this issue.

22

that Marv's January 2010 recording of the Quitclaim Deed (from Rex to Oboe) constituted a postpetition transfer of estate property in violation of § 549 and an act against property of the estate in violation of § 362. But Appellants' argument is founded upon a false premise: that the Property was property of the Debtor's that became property of her bankruptcy estate when Debtor filed bankruptcy in January 2008. Appellants assert that the Debtor acquired her interest in the property when Rex died in July 2005 without a will. However, that assertion only would be true if we were to ignore the effect of the March 2005 Quitclaim Deed, pursuant to which Rex conveyed the Property to Oboe.

In California, an unrecorded deed is effective between the parties to the deed. 5 Harry D. Miller and Marvin B. Starr, CAL. REAL ESTATE § 11:2 & n.14 (3d ed. 2009) (citing numerous cases). Having conveyed the Property to Oboe, Rex had nothing to pass by intestate succession to the Debtor. See Madden v. Alpha Hardware & Supply Co., 274 P.2d 705, 707 (Cal. App. 1954) (holding that decedent cannot pass title in property to his heirs when he had no title in the subject property at the time of his death).

But even if Rex somehow could have passed some interest in the Property to the Debtor by intestate succession, that interest still would have been subject to the unrecorded Quitclaim Deed, because an unrecorded deed "is also valid and enforceable against any party who subsequently acquires an interest in the property, who has notice of the prior unrecorded interest, or who has failed to pay a valuable consideration for the interest." CAL. REAL ESTATE, supra, at § 11:2 (emphasis added). Here, Appellants' contention that Debtor inherited the Property is fundamentally

23

inconsistent with any claim that Debtor paid valuable consideration for that interest.

Appellants assert that <u>Chase Manhattan Bank v. Taxel (In re Deuel)</u>, 594 F.3d 1073 (9th Cir. 2010), supports their position. We disagree. Citing <u>Deuel</u>, Appellants claim that, because the Quitclaim Deed was unrecorded at the time of Debtor's bankruptcy filing, it was ineffective as against Debtor's bankruptcy trustees, who may claim bona fide purchaser status under § 544. But <u>Deuel</u> is inapposite. The holding in <u>Deuel</u> is premised in part on the fact that the debtor there held legal title to her residence at the time of her bankruptcy filing. Based on that interest, the bankruptcy trustee there could assert the status of a hypothetical bona fide purchaser under § 544(a)(3). On its face, in order to avoid a transfer under § 544(a), the property transferred must have been "property of the debtor" before the transfer.

In this case, however, Debtor had no interest in the Property (and never had any interest in the Property). Under California law, Rex held title to the Property as his sole and separate property until he conveyed it in March 2005 to Oboe. Simply put, there was no transfer of Debtor's property for a hypothetical bona fide purchaser to avoid.

Appellants have not disputed that, in order to prevail either on their § 549 claim or on their claims under § 362, the Property must have been property of the Debtor's or property of the estate. As set forth above, neither the debtor nor the estate had any interest in the Property. Accordingly, these claims lack merit.

24

In sum, we perceive no error in the legal conclusions the bankruptcy court relied on when it assessed the worth of the adversary proceeding. Given that the court properly and correctly determined that the adversary proceeding was essentially worthless, it did not err when it dismissed Debtor's bankruptcy case.

**B. Dismissal of Adversary Proceeding**

Having decided that the bankruptcy court did not err in dismissing the bankruptcy case, we next consider whether the bankruptcy court properly dismissed the adversary proceeding. Appellants, in essence, contend that it was inappropriate for the court to dismiss the adversary proceeding on the merits when the only matter before the bankruptcy court at the time was Marv's motion to dismiss the underlying bankruptcy case.

We agree that the bankruptcy court should not have finally determined and disposed of the merits of the adversary proceeding in the context of the case dismissal motion. On a number of occasions, we have held that bankruptcy courts should not finally determine issues in contested matters that are properly the subject of adversary proceedings. Cogliano v. Anderson (In re Cogliano), 355 B.R. 792, 804-05 (9th Cir. BAP 2006) (citing cases); see also GMAC Mortgage Corp. Salisbury (In re Loloee), 241 B.R. 655, 660 (9th Cir. BAP 1999). The Court of Appeals has reached similar conclusions. See, e.g., Bear v. Coben (In re Golden Plan of Cal., Inc.), 829 F.2d 705, 711-12 (9th Cir. 1986); Brady v. Andrew (In re Commercial W. Fin. Corp.), 761 F.2d 1329, 1337-38 (9th Cir. 1985).

However, as we mentioned above, we may affirm on any basis

25

supported by the record. <u>In re E. Airport Dev., LLC</u>, 443 B.R. at 828. And we already have upheld, above, the bankruptcy court's dismissal of the bankruptcy case. In light of the case dismissal, dismissal of the adversary proceeding also was appropriate. The dismissal of the underlying bankruptcy case ordinarily leads to the dismissal of pending adversary proceedings. <u>See</u> 3 <u>Collier on Bankruptcy</u> ¶ 349.03[2](Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2011). While the court sometimes has discretion to retain jurisdiction over some adversary proceedings, <u>see</u> <u>Carraher v. Morgan Elec., Inc. (In re Carraher)</u>, 971 F.2d 327, 328 (9th Cir. 1992), there are other times when the case dismissal leaves the bankruptcy court with no basis for exercising its discretion to retain jurisdiction. <u>See, e.g.</u>, <u>Clift v. Gustafson (In re Gustafson)</u>, 316 B.R. 753, 758 (Bankr. S.D. Ga. 2004); <u>In re Davison</u>, 186 B.R. 741, 742 (Bankr. N.D. Fla. 1995). These cases stand for the proposition that the continued survival of bankruptcy avoidance claims depends on the continued existence of the bankruptcy case. More broadly stated, if any claim for relief depends on the continued existence of the bankruptcy estate and/or the continued service of the bankruptcy trustee, such claim cannot survive the dismissal of the underlying bankruptcy case. <u>See</u> <u>Pauley v. Bank One Colo. Corp.</u>, 205 B.R. 272, 275 (D. Colo. 1997) ("The law does not allow the use of discretion when an adversary proceeding depends upon the bankruptcy case for its existence."); <u>Roma Grp., Inc. v. Michael Anthony Jewelers (In re Roma Grp., Inc.)</u>, 137 B.R. 148, 150-51 (Bankr. S.D.N.Y. 1992) (holding that debtor's equitable subordination claim ceased to exist with the dismissal of the

26

underlying bankruptcy case).

This is precisely the situation here. All of Appellants' claims for relief are bankruptcy avoidance and recovery claims, which contemplate the existence of an estate that will benefit from the avoidance and recovery, and the service of a trustee to pursue those claims. In light of the dismissal of the underlying case, there no longer existed the requisite estate and the former trustees no longer had standing to continue to pursue the claims for the benefit of the former estate. See generally § 349(b) (explaining effect of case dismissal on bankruptcy estate).

Consequently, we may affirm the bankruptcy court's dismissal of the adversary proceeding on this alternate basis. On the other hand, a dismissal of the adversary proceeding based on dismissal of the underlying bankruptcy case should not have purported to determine the merits of the adversary proceeding. Accordingly, we hereby MODIFY the bankruptcy court's dismissal of the adversary proceeding to a dismissal without prejudice. When a court dismisses a lawsuit on jurisdictional or procedural grounds, the court should not determine the merits of the lawsuit. See Wages v. IRS, 915 F.2d 1230, 1234 (9th Cir. 1990) ("A jurisdictional dismissal is not a judgment on the merits.").

## CONCLUSION

For the reasons set forth above, we MODIFY the dismissal of the adversary proceeding to a dismissal without prejudice and, as modified, AFFIRM the bankruptcy court's dismissal of both the bankruptcy case and the adversary proceeding.

27