**WELLER REALTY, INC., Plaintiff,**

v.

**Franklin D. TAULBEE, Defendant and Third Party Plaintiff,**

**Nicholas L. Weller, Third Party Defendant.**

**In the Matter of Franklin D. TAULBEE, Beverly A. Taulbee, Debtors.**

**Bankruptcy No. 3–80–03354. Adv. No. 3–80–0723.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Dec. 12, 1981.

Richard G. Knostman, Dayton, Ohio, for plaintiff.

E. James Wampler, Dayton, Ohio, for third party defendant.

John E. Ducker, Dayton, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter was instituted before the Court by Plaintiff's "Complaint to Determine Dischargeability of Debt," filed 19 December 1980. The Complaint alleges that Franklin D. Taulbee, one of the above-named Debtors, was the drawer of a check which named Plaintiff as payee for the sum of $1,500.00, and that Mr. Taulbee wrote the check with the knowledge that it would be dishonored. Mr. Taulbee's wife, and co-Debtor in their Joint Petition, is not a party in the instant adversary. The Complaint also alleges that Mr. Taulbee. is in possession of personalty, a "range and refrigerator," which belongs to Plaintiff.

By order entered 29 January 1981 Nick L. Weller was made "Third Party Defendant" and an Answer and Third Party Complaint filed in behalf of Franklin D. Taulbee, seeking dismissal of the complaint, attorney's fees and damages in the amount of $25,-000.00 from Weller Realty and Nick L. Weller for "concurrent fraud, and misrepresentation...."

This Court held a pretrial conference on April 8, 1981. The parties submitted a Pretrial Order on June 29, 1981, and the Court held a trial to consider the matter on July 6, 1981. The following decision is essentially a factual determination based upon the Pretrial Order, the pleadings, and the evidence adduced at trial, without arguments or citations of authorities (having been waived by counsel for the parties).

### FINDINGS OF FACT

The instant case centers around a "lease" arrangement between the parties whereby Debtors sold their home to Nicholas J. Weller, in his personal capacity; and, as part of the contract of sale, Mr. Weller leased the home back to Debtors for a term of one year, with a one-year option for Debtors to repurchase and with the right to extend the

lease term. Plaintiff procured the arrangement to "help out" Debtors, who were named-Defendants in a pending foreclosure suit. An associate of Mr. Weller discovered this suit in a regular search of the state court records for such matters.

Upon conferring with Mr. Weller, the Debtors were apprised that the offer to "help out" contained numerous complexities and legal maneuvers or devices, and different "packages," summarized as follows:

> Defendant and his wife would agree to sign a listing contract with Weller Realty for one year; the real estate would be conveyed, however, to Weller, who would cure the arrearages; Defendant would pay $750.00 per month on this contrived "lease-purchase" which would be used to pay mortgage payments; Defendant would deposit another $750.00 as a "security deposit Defendant and his wife would further be granted an "option" to "purchase" at the price of $69,000.00.

The numerous legal instruments were prepared by Weller and there is no doubt that the Taulbees signed in desperation without a clear understanding of the legal ramifications, and without more than a token closing conference.

The contract of sale was signed by the parties on September 8, 1980. The contract specifically provided that Debtors were to deliver to Plaintiff a general warranty deed for the home no later than September 25, 1980. In exchange for the deed, Mr. Weller, the "purchaser" according to the terms of the contract, agreed to (1) assume Debtors' home mortgage of $48,550.00 and pay all mortgage arrearages; (2) deposit $1.00 of "earnest money" with Weller Realty, Inc., referred to as Debtors' "agent" in the contract; (3) lease the home back to Debtors for $750.00 per month with a $750.00 security deposit; (4) grant Debtors a one-year option to repurchase the home for $69,000.00; and (5) pay a *pro rata* share of the semi-annual installment of taxes and assessments, and operating expenses.

The contract of sale was then finalized by the parties. Debtors delivered a general warranty deed for the home on September 26, 1980, to Weller Realty, Inc. Three days later, Debtors wrote the check in issue to Plaintiff, as the Payee, for the sum of $1,500.00. This check was dishonored. Debtors vacated the home on October 27, 1980, taking with them the "range and refrigerator," after Weller Realty, Inc. threatened a forcible entry and detainer suit, which was then filed on October 28, 1980 by Weller Realty, Inc.

On, or about, 7 November 1980, a sale and conveyance of the real estate to purchasers Stanley A Wyspianski and Nancy Kutnak Wyspianski was arranged for $70,000.00, upon assumption of the existing mortgage in the amount of $48,261.92, and paying off a second mortgage in the amount of $9,133.59, and a judgment lien of $34.23. Also to be charged was a real estate commission in the amount of $4,900.00 split by Roth Realty and Weller Realty, Inc. These buyers had been obtained prior to bankruptcy. After paying closing expenses, there remained a net cash balance of $6,902.33 which was to be disbursed to "sellers." This sale was never consummated.

On 5 December 1980, John T. Ducker, Trustee in Bankruptcy, filed Notice of Sale of Trustee's Interest in Real Property to prospective purchasers for $70,000.00, all liens to attach to the proceeds.

The Trustee in Bankruptcy, in light of the pending litigation and title questions, then quitclaimed his interest to Mr. Weller. The Trustee testified that he received the amount of $905.00 from Weller Realty, Inc. for his "equity," and "paid" a 6% commission of $4,200.00 to Weller Realty, Inc. for the "sale." This commission was paid even though initially the Trustee did not know that Mr. Weller himself was the purchaser, but had the impression that Weller Realty, Inc. was acting as an agent for an unknown third party purchaser.

The figures reported by the Trustee indicate that Debtors' home was sold to Mr. Weller for $70,000.00. The closing statement indicates that, aside from the Trustee expense, no actual funds were transferred in the sale. Instead, Mr. Weller agreed to

assume Debtors' first and second mortgages on the home. These mortgages were listed on the closing statement as having balances of $52,421.35 (Ryan Financial Services) and $10,750.00 (TransAmerica (Pacific) Financial Services), respectively. The Court notes that these balances represent the amount due on the mortgages prior to any dealings between the parties, and that the actual outstanding balances had been reduced by payments made by Plaintiff as discussed below. The remainder of the $70,000.00 sale price constituted the $4,200.00 commission to Weller Realty, Inc., the $905.02 Trustee expense, and $1,723.63 of "costs to stay foreclosure and pay shortages" incurred by Plaintiff.

Plaintiff's exhibits, uncontested by Debtors, document the following payments by Plaintiff;

—$6,749.67—payments toward Debtors' first and second mortgages (TransAmerica (Pacific) Financial Services and Ryan Financial Services) made prior to contract of sale with Trustee, dated December 9, 1980;

—$144.00—insurance payment made prior to the Trustee sale,

—$168.67—home repair made prior to the Trustee sale;

—$905.00—payment to the Trustee for his efforts in the Trustee sale;

—$65.25—payment to the Auditor in preparation for the pre-Petition "sale";

—$4.00—payment to the Recorder in preparation for the pre-Petition "sale";

—$350.00 payment to attorney for legal advice;

—$2,121.84—payments toward Debtors' first and second mortgages made subsequent to the Trustee sale;

—$463.63—utility payments made subsequent to the Trustee sale.

In the instant matter, Plaintiff alleges that Defendant defrauded Plaintiff by knowingly writing a check with insufficient funds and thereby wrongly inducing Plaintiff into leasing Debtors' home back to them. Plaintiff argues that the debt represented by the check, therefore, should be found nondischargeable in accordance with 11 U.S.C. § 523(a)(2)(A). Plaintiff also requests that the Court grant "further relief as is just" regarding Debtors' "wrongful" possession of "Plaintiff's" range and refrigerator.

Debtors respond that, despite the literal terms of the contract, the arrangement was in substance an agreement by Debtors to list the home with Weller Realty, Inc. for a one-year period. Debtors deny having knowingly delivered deed to the property to Plaintiff, and argue that Debtors only acted because of misrepresentations by Plaintiff. Debtors contend that Debtors were pressured to sign the deed along with several other documents, without the opportunity to read the documents, and without the advice of counsel. On this basis, Mr. Taulbee requests dismissal of the instant Complaint, along with attorney's fees and exemplary damages.

## DECISION AND ORDER

The basic task confronting the Court in this matter is determination of the proper distribution of the "proceeds" from the "sale" of Debtors' home. The parties have agreed to submit the matter for factual findings of the Court, without submission or discussion of questions of law or legal authorities.

■ The initial question before the Court is whether the legal arrangements between the parties prior to the instant bankruptcy Petition filing effected an unqualified transfer of the title of the real estate in issue to Mr. Weller prior to Debtors' filing. This Court finds that they did not. Instead, looking to the substance over the form of these arrangements, the Court finds that the instant pre-Petition arrangements constituted an artificial conveyance and offer of repurchase, and were, in fact, merely a security arrangement to enable the resale of the real estate by Weller Realty, Inc. and to protect the realtor for any advances. For the purposes of the instant adversary, therefore, the real estate in issue was correctly listed as Debtors' property at the filing of Debtors' Petition. No findings are

necessary, therefore, as to the allegations that the deed was not executed in the presence of two witnesses and acknowledged properly before a notary public or that execution was influenced by misrepresentation.

The Court, acting on the basis of its equitable jurisdiction, however, finds that the proper resolution of the pre-Petition arrangements is to place the parties in the position they originally found themselves. To this end, the Court finds that Plaintiff is entitled to be "made whole" by prior claim to Debtor on any sale proceeds to the extent that Plaintiff made actual payments for Debtors' benefit.

The methods of distribution, to be discussed below, can best be prefaced by a hypothetical distribution of the full value of the home to all the mentioned interested parties. Had the Trustee received $70,000.00 in proceeds from the December sale of the home, as originally contemplated, the proceeds would be distributed in the following order:

(1) administrative expenses—($905.02 for Trustee expense in handling the sale, and any allowed commissions);

(2) perfected security interests in the real estate as listed in the bankruptcy Petition —(the TransAmerica (Pacific) Financial Services and Ryan Financial Services mortgages), (Note here that any amounts paid by Weller Realty, Inc. to the mortgagees subsequent to the Bankruptcy Petition filing, and thus reducing the outstanding balances listed in Debtors' schedules, are not considered a second time as due to the mortgagees. The total amount of the claims as of the moment of the Petition filing, however, are subtracted from the hypothetical $70,000.00 proceeds at this point, because, in essence, the mortgagees have received full payment; and the difference between the amount received from the proceeds and the amount received from all sources, who are now entitled to payment based on the secured status of the mortgagees, is calculated below—i.e., any mortgage payments made by Plaintiff prior to the Trustee sale are to be returned to Plaintiff below, and any payments made subsequent to the Trustee sale are accounted for in any net equity accumulated in the property);

(3) consideration paid prior to the Trustee sale by Plaintiff pursuant to the September "sale," since this Court has deemed the "sale" to be a security agreement reformable and reversible by the Court's equitable powers;

(4) up to $10,000.00 for the Debtors' homestead exemption—see 11 U.S.C. §§ 522(b) and (d)(1), O.R.C. §§ 2329.66(A)(1) and .662, (note that the Debtors were using the home as their residence at the time of the Petition filing);

(5) any overage to Debtors' Estate for distribution to Debtors' other creditors, with any remainder to the Debtors.

The instant facts, however, differ markedly from the above hypothetical distribution. The Trustee "sale," in essence, constituted the Trustee's transfer of a quitclaim deed in exchange for $905.00 for the Trustee's expenses. Further, the purchaser, deemed by this Court to be an equitable secured creditor, provided consideration by the assumption of mortgages to prior secured creditors and an implied contribution of the purchaser's prior expenditures on behalf of Debtor. Given this factual background, the initial task confronting the Court is the determination of the "consideration" provided by each party in the pre-Petition arrangement in order to return each party to their respective prior positions.

Debtors' consideration included: (1) listing the home with Weller Realty, Inc. for sale (2) conveying as security the home to Mr. Weller, (3) signing a lease agreement, and (4) naming Weller Realty, Inc. as payee of a check for $1,500.00, pursuant to the lease agreement. In order to place Debtors in the position they originally found themselves, this Court finds that a beneficial interest to the home remained with the Debtors, (though record title was subsequently transferred to Mr. Weller by the post-Petition Trustee sale), and that the $1,500.00 check should be returned to Debtors. In this regard, the Court further finds

that the Debtors did not write the $1,500.00 check with an intent to obtain money by fraudulent means as alleged in the instant Complaint, but rather as a part of a scheme conceived by the realtor to remove title from insolvent debtors and then subject to legal action by creditors.

The consideration provided by Weller Realty, Inc., up until the Trustee sale on December 5, 1981, at which time Mr. Weller took title to the property because of a breakdown in the arrangements to the extent the evidence has been adduced, included: (1) mortgage payments to TransAmerica (Pacific) Financial Services and to Ryan Financial Services, (holding first and second mortgages), totaling $6,749.67, (2) an insurance payment for $144.00, (3) a repair expense of $275.00, and (4) the agreement to attempt to sell the home. The Court should note that this list explicitly excludes those expenses incurred subsequent to the Trustee quitclaim deed, specifically mortgage payments totaling $2,121.84 and utility payments totaling $463.63. These are omitted because, by reason of the Trustee's quitclaim, Mr. Weller personally intended to take over the property, becoming personally responsible for "his own" utility bills (especially in light of the intent and attempt to evict Debtors from the premises) and for mortgage payments which, in essence, contribute to net equity in the home. The fact that Mr. Weller chose to pay these personal expenses through the conduit of a corporation bearing his name should not operate to permit reimbursement of post-Trustee sale expenses because of the terms of a prior pre-Petition sale, which this Court has found was intended to be a security arrangement. It is important to note the prior approval was never sought from this Court. The Court has also excluded from the consideration provided by Plaintiff, those expenses associated with the Trustee quitclaim which are typically assumed by the purchase, (i.e. the expenses for the Recorder, the Auditor and legal advice), and for which Mr. Weller, as "purchaser" under the terms of the contract of sale is thus personally responsible.

■ An ancillary question is whether Plaintiff is entitled to any broker commission(s) from the artfully designed transactions. This Court finds that Plaintiff is not. The September "sale" did not include a commission by its own terms, and Plaintiff did not argue, and this Court does not believe, that a commission for the pre-Petition transactions was earned, or would be appropriate. Plaintiff does contend that it is entitled to a $4,900.00 commission to be split jointly with Roth Realty in regard to the unconsummated post-Petition Wyspianski sale. The Court again finds that awarding this commission would be inappropriate. Although it is true that Debtors did not fulfill their "rent" obligations under the pre-Petition security arrangement, Plaintiff did not keep the mortgages on Debtors' home up to date as agreed in the arrangement. In short, the demise of the Wyspianski "sale" (which wisely resulted when the Wyspianskis' discovered that the home was to be the subject of bankruptcy proceedings), was predestined by the conduct of both parties; and, in light of the fact that the sale was not consummated, the Court finds that the alleged commission was unearned. Plaintiff also argues that it is entitled to a commission of $4,200.00 for its part in the December Trustee quitclaim. This Court finds that Plaintiff should not be awarded a commission for the conveyance of Debtors' home to Mr. Weller, especially in light of the fact that the sale was undertaken to give Mr. Weller title free of creditors' claims and thus to enable Plaintiff to resell the home, at which time a commission would have been earned and chargeable.

■ Plaintiff also argues that Debtors have improperly retained possession of the "range and refrigerator" which were in the home prior to the instant transactions. The Court finds that none of the contracts in evidence cover the disposition of the range or refrigerator, and that, since the items were not fixtures (i.e. attached to the home), Debtors did retain title and possession.

■ The Court, however, finds that Debtors are not entitled to attorney's fees

or exemplary damages as prayed for in Debtors' answer. In light of the factual circumstances, and, specifically, Debtors' failure to abide by the terms of the pre-Petition arrangements, the Court finds that an award of this nature would be unwarranted.

The final task before the Court is to coalesce all of the above reasoning into a final distribution of the "proceeds." Since the Trustee received $905.02 as an administrative expense, this amount should be subtracted from the $70,000.00 sale price first, leaving $69,094.98 to be accounted for. Mr. Weller assumed Debtors' mortgages of $52,-421.35 and $10,750.00 (a total of $63,171.35), leaving $5,923.63 left to account for. The mortgage balances used in the Trustee sale to calculate Mr. Weller's consideration were based upon the balances due prior to payments by Plaintiff toward the mortgages under the pre-Petition arrangement. In other words, Plaintiff impliedly contributed any mortgage payments made on behalf of Debtors as consideration in the Trustee sale. Those mortgage payments made by Plaintiff on behalf of Debtors, therefore, are not recoverable from Debtors, but will be realized as Mr. Weller's net equity upon future resale of the home. Debtor's initial $1,500.00 payment to Plaintiff under the pre-Petition arrangement, however, was, in essence, to have been contributed by Debtors to Plaintiff so that Plaintiff could, in turn, use the $1,500.00 as a fund for Plaintiff's mortgage payments in behalf of Debtors. Hence, although the $1,500.00 debt is dischargeable, as determined above, this amount is owed by Debtors to Plaintiff, as secured creditor, from any interest Debtors may have in any surplus from the $5,923.63. This $1,500.00 obligation can thus properly be treated as additional consideration provided by Mr. Weller in the purchase of Debtors' home, leaving $4,423.63 to be accounted for. Plaintiff's contribution of $1,723.63 of costs to stay the state foreclosure action is properly recoverable by Plaintiff since it will not be recouped by Mr. Weller in Mr. Weller's future resale of the home, and thus also may be applied by Mr. Weller as consideration toward the pur-

chase of the home. This leaves $2,700.00 unaccounted for in the Trustee sale. Since the Court has determined that the alleged $4,200.00 commission cannot properly constitute consideration toward the purchase of Debtors' home, the Court finds that Mr. Weller is liable to the Trustee in the amount of $2,700.00, and that this amount should be collected by the Trustee for distribution conformably to future order of the Court.