**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-17-1233-TaFB |
| DOORMAN PROPERTY MAINTENANCE, | Bk. No.   3:15-bk-30912-DM |
| Debtor. | |
| NICHOLAS KRAEMER; BARRETT RAFTERY, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| FS PARTNERSHIP; FULTON HOUSE, LLC, | |
| Appellees. | |

Argued and Submitted on May 25, 2018
at San Francisco, California

Filed – June 19, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Dennis Montali, Bankruptcy Judge, Presiding

Appearances:   Charles Alex Naegele argued for appellants;
William F. McLaughlin argued for appellees.

Before:   TAYLOR, FARIS, and BRAND, Bankruptcy Judges.

---

[*]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

This appeal involves a contract to renovate the "Archbishop's Mansion," a building in San Francisco, California (the "Property"). FS Partnership hired "Doorman Property Maintenance" to perform the required renovation. At that time, Doorman Property Maintenance was a DBA for Doorman Property Management, a California Partnership (the "Doorman Partnership"). Nicholas Kraemer and Barrett Raftery (collectively, "Appellants") formed the Doorman Partnership and were its general partners. They also subsequently formed and have an interest in two corporations with names including the words "Doorman Property."

During the renovation project, the Doorman Property entities lost the required contractor's license, ceased doing business, and "Doorman Property Management" filed a chapter 7[1] bankruptcy petition. There was initial confusion about which Doorman Property entity filed, but eventually a substantive consolidation determination brought two Doorman Property entities before the bankruptcy court.

The FS Partnership and a related entity, Fulton House LLC, (collectively, the "Fulton Entities") filed a $310,000 proof of claim in the case. Appellants objected and sought to disallow the claim in full. After a trial, the bankruptcy court partially overruled the objection; it found that the claim

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

totaled $286,896 and that $186,896 was a Doorman Partnership liability.

Appellants principally argue on appeal that the bankruptcy court deprived them of due process: they assert that they intended to argue, in a different proceeding and based on new arguments and additional evidence, that the debt owed by the Doorman Partnership should be set at $0.

The bankruptcy court, however, did not clearly err in finding that the Doorman Partnership contracted with FS Partnership and was partially liable on the claim. The additional evidence advanced by the Doorman Property entities does not show otherwise. And Appellants had reasonable notice that the bankruptcy court would decide the Doorman Partnership's liability in the context of the claim objection. We AFFIRM the bankruptcy court.

## FACTS[2]

**Appellants form various "Doorman Property" entities and do business with the Fulton Entities.** In January 2011, Appellants formed the Doorman Partnership and named themselves its general partners. The Doorman Partnership did business as "Doorman Property Maintenance."

In 2012, FS Partnership bought the Property and began a business relationship with the Doorman Partnership.

In 2013, Appellants formed a California S corporation; they

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case and a related adversary proceeding. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

also named it "Doorman Property Management."

In 2014, FS Partnership signed a "Terms and Conditions" agreement for a job located at the Property (the "Property Agreement"); the Property Agreement bears a Doorman Property Maintenance header and provides for payments to "Doorman Property Management." Mr. Kraemer signed it as an "Authorized Doorman Representative." The record supports that the Doorman Partnership was the contracting party as, at the time of the Property Agreement, only the Doorman Partnership did business as Doorman Property Maintenance.

After the Property Agreement was signed, corporate Doorman Property Management amended its articles of incorporation to change its name to "Doorman Property Maintenance."

And about the same time, Appellants formed a third entity, another California corporation called "Doorman Property Management, Inc."

In January 2015, Doorman Property Management (no corporate identifier) and FS Partnership modified the Property Agreement. At this time, only the Doorman Partnership was named "Doorman Property Management," and the modification of the Property Agreement by the Doorman Partnership provides additional evidence that it was the contracting Doorman Property entity.

A month later, Doorman Property Maintenance and Doorman Property Management Inc. as "S Corporations in California" executed two demand promissory notes evidencing loans from Fulton House LLC. The notes were in the principal amounts of $25,000 and $75,000.

At some point, the only contractor's license allowing the

Doorman Property entities to operate was suspended, and they shut down.

**The bankruptcy filing, substantive consolidation, and claim objection.** In July 2015, Doorman Property Management filed a chapter 7 bankruptcy petition. The petition listed "DBA Doorman; DBA Doorman Property Maintenance" as names used in the last 8 years. The names in the petition were accurate only in reference to the Doorman Partnership. The petition also provided two EINs, one ending in 7 and the other in 2. One EIN relates to the Doorman Partnership; the record does not identify the entity related to the other EIN. That said, however, "Corporation" was checked in the "Type of Debtor" box, and Mr. Raftery signed the petition as CFO.

As it turns out, Appellants did not want the Doorman Partnership to file. They eventually noticed the error and filed an amended petition that changed the Debtor's name to "Doorman Property Maintenance, a CA Scorp" and listed "FKA Doorman Property Management, a CA S Corp" as a name used in the last 8 years. The amended petition identified a new EIN, this time ending in 9. The "Corporation" box remained checked. Mr. Raftery signed the petition as CFO and filed an explanatory declaration:

> In the originally filed Voluntary Petition, Debtor incorrectly listed the EIN of the Doorman Property Management Partnership. . . . Debtor had intended to file the instant Chapter 7 for the California Corporation and not a General Partnership. Therefore, Debtor now amends the Voluntary Petition deleting the EIN of the Doorman Property Management Partnership.
>
> Further, in the originally filed Voluntary Petition, Debtor inadvertently and incorrectly listed "Doorman Property Management" as the name of the filing Debtor

5

instead of "Doorman Property Maintenance, a CA SCorp." Debtor now amends the Voluntary Petition to list "Doorman Property Maintenance, a CA SCorp. formerly known as Doorman Property Management, a CA S Corp." as the filing name of the Debtor.

Ambiguity as to the debtor or debtors before the bankruptcy court thus existed. And in the face of this confusion, the Fulton Entities filed Claim No. 18-1 in the amount of $310,000 based on "Breach of Contract" and "Construction Defect". They named the debtor as "Doorman Property Maintenance" – the name most recently selected for the case absent the "a CA S Corp" limitation.

The chapter 7 trustee promptly disputed the legal effect of the petition amendment; she argued that deleting the partnership name did not remove it or its assets from the bankruptcy estate. Eventually, the Trustee moved for an order substantively consolidating "Doorman Property Management, Inc., and (to the extent not already part of the above bankruptcy case) Doorman Property Management, a general partnership, with the estate of the above Debtor."

Over opposition, the bankruptcy court granted the motion, in part, "insofar as the Trustee sought to consolidate substantively Doorman Property Management, a corporation, to the extent that Doorman Property Management, a general partnership, and its assets and liabilities, were not at all times part of the bankruptcy case." Consolidation was effective nunc pro tunc to the petition date. The bankruptcy court deferred deciding whether to substantively consolidate Doorman Property Management, Inc.

The substantive consolidation order was not appealed. It

"combine[d] the assets and liabilities of [the] separate and distinct—but related—legal entities into a single pool and treat[ed] them as though they belong[ed] to a single entity." Alexander v. Compton (In re Bonham), 229 F.3d 750, 764 (9th Cir. 2000).

Anticipating that estate assets would not pay claims in full, the Trustee demanded that Appellants make up any deficiency as required by § 723 based on their status as general partners of the Doorman Partnership. The Trustee later filed an adversary proceeding against Appellants and included a § 723 claim for relief; she alleged that there was a $539,039 deficiency between the assets and aggregate claims on file and that, under § 723, Appellants were liable for the deficiency as partners.

Appellants, as "non-debtor interested parties" and as "general partners of [the Doorman Partnership]" objected to Claim No. 18. The claim objection relied significantly on their potential § 723 status as a basis for standing. And the arguments advanced in the claim objection relate exclusively to claims under the Property Agreement and alleged defenses to such claims. FS Partnership defended the claim.

**The bankruptcy court's oral ruling and separate order resolving the claim objection.** The bankruptcy court eventually held a one-day trial on the claim objection. Just over a week later, the bankruptcy court made oral findings of fact and conclusions of law. It liquidated the claim and found that it supported a claim for $186,896 in damages based on breach of the Property Agreement. It also found that the corporate Doorman

7

Property entities, but not the Doorman Partnership, owed $100,000 on the promissory notes.

In sum, the bankruptcy court found that the Fulton Entities had "a total allowed claim of 286,896, . . . of which 186,896 is joint and several liability of both the [Doorman Partnership] and the corporate debtor." Oral Findings of Fact, Hr'g Tr. (Jan. 18, 2017) at 9:15–19.

Having ruled, the bankruptcy court asked if either party had any questions or points of clarification. Appellants' counsel noted his supposition that the trial would not decide "the differentiation between the corporation and the partnership . . . ." Id. at 10:10–11. The bankruptcy court did not alter its conclusion but told Appellants they could bring a reconsideration motion.

The bankruptcy court entered an order consistent with its oral ruling.

**Appellants seek reconsideration.** Appellants filed a reconsideration motion that argued, among other things, that no debt should be allocated to the Doorman Partnership. They also provided evidence allegedly supporting their position. The bankruptcy court issued a memorandum decision and separate order denying reconsideration. He carefully discussed Appellants' theories and evidence but found neither persuasive. In particular, he noted that the new argument that Appellants abandoned the Doorman Partnership was inconsistent with the record. He further noted the complete absence of evidence that Appellants properly dissolved the Doorman Partnership as required by California law and outlined the consequences of this

8

failure. And he underscored that the reconsideration motion was not based on newly discovered evidence; rather, it was a second attempt after Appellants' counsel's concession that he had not previously made available arguments with sufficient precision.

Appellants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court deprive Appellants of due process?

Did the bankruptcy court err when it decided the claim objection?

Did the bankruptcy court abuse its discretion when it denied Appellants' reconsideration motion?

## STANDARDS OF REVIEW

We review de novo whether a litigant's due process rights were violated. DeLuca v. Seare (In re Seare), 515 B.R. 599, 615 (9th Cir. BAP 2014).

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. Lundell v. Anchor Const. Specialists, Inc. (In re Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000).

We review for an abuse of discretion the bankruptcy court's decision on a § 502(j) reconsideration motion. Heath v. Am. Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424, 429 (9th Cir. BAP 2005).

A bankruptcy court abuses its discretion if it applies the

wrong legal standard, misapplies the correct legal standard, or makes findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quotation marks omitted).

## DISCUSSION

### A. The bankruptcy claims process

A creditor asserts a claim in bankruptcy by filing a proof of claim. 11 U.S.C. § 501(a); Fed. R. Bankr. P. 3001, 3002. A claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an interested party objects, the bankruptcy "court, after notice and a hearing, **shall** determine the amount of such claim . . . and **shall** allow such claim in such amount . . . ." 11 U.S.C. § 502(b) (emphasis added).

A properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). To overcome this presumption of validity, the objector must do more than formally object. Lundell, 223 F.3d at 1039. Instead, to "defeat the claim, the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the

10

allegations of the proofs of claim themselves.' " Id. (citing Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991)).

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." Id. (quoting Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.), 178 B.R. 222, 226 (9th Cir. BAP 1995)). The ultimate burden of persuasion, thus, remains with the claimant. Id.

An allowed or disallowed proof of claim "may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008. If the time to appeal an order on a claim objection has not expired, a reconsideration request is governed by Civil Rule 59, applied in bankruptcy by Rule 9023. Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 103 (9th Cir. BAP 2006), aff'd, 277 F. App'x 718 (9th Cir. 2008).

**B.    The bankruptcy court did not clearly err when it found that the contracting party was the partnership.**

Appellants argue that the bankruptcy court's allocation of liability was not based on admissible evidence. But their brief is self-defeating because it points to evidence the bankruptcy court relied upon – they just think the evidence is either "not really evidence" or ambiguous. Appellants' Opening Br. at 24. We disagree.

The bankruptcy court found that the Doorman Partnership entered into the Property Agreement with FS Partnership. It

11

based this conclusion on the contract, which the parties entered into evidence: it "has a title, 'Doorman Property Maintenance.' " Oral Findings of Fact at 11:8–9. And that title "doesn't recite corporation or not." Id. at 11:9–10.

Appellants argue that the lack of a corporate identifier is inconclusive; they emphasize that the corporation's official name does, in fact, lack the corporate identifier: it is named Doorman Property Maintenance. And Appellants are correct that, on a cursory read, this appellation is ambiguous because it could be read two ways: it could be the Doorman Partnership or a Doorman corporation.[3]

Appellants are wrong, however, when they suppose this ambiguity renders clearly erroneous the bankruptcy court's finding. To the contrary: "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574; United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003). And "[t]his is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." Anderson, 470 U.S. at 574.

Further, when the Property Agreement was signed, the

---

[3] Appellants stated this more clearly in their reconsideration motion, emphasis added: "This Court made its ruling on the partnership versus corporation liability split **based upon a single piece of evidence — the name in the contract.** Because this name was the same as the name of the Partnership, the Court concluded that this must have been a liability of the Partnership."

12

corporation had not changed its name to Doorman Property Maintenance. And after the corporation changed its name, Doorman Property Management (i.e., the Doorman Partnership) agreed with FS Partnership to modify the Property Agreement.

The bankruptcy court thus did not clearly err when it found that the contracting party was the Doorman Partnership.

**C.    The bankruptcy court did not deprive Appellants of due process.**

Appellants raise two due process arguments. Neither establishes that the bankruptcy court erred.

**Appellants were on notice that the bankruptcy court would determine the amount of the claim against the partnership.** Appellants argue that the bankruptcy court denied them due process because they were not on notice that it would decide whether the claim was an obligation of the corporation or the Doorman Partnership or both. We disagree; Appellants incorrectly assume the bankruptcy court did something other than liquidate the claim.

"Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010) (internal quotation marks and citation omitted). As we illustrate, Appellants had notice that the bankruptcy court would determine the amount of the claim.

The Fulton Entities filed Claim No. 18 before substantive consolidation. At that time, there was ambiguity about which entity was the debtor. That said, the claim was based on

13

"Breach of Contract" and "Construction Defect." They attached the relevant contract, the Property Agreement. As discussed above, the Doorman Partnership was the party to that contract. So the Fulton Entities asserted a claim against, at least in part, the Doorman Partnership.

The bankruptcy court entered the substantive consolidation order. That order clarified that to the extent the Doorman Partnership was not "at all times part of the bankruptcy case[]" it was consolidated with the bankruptcy estate.

Appellants then objected to the claim and argued they had standing to do so as general partners of the Doorman Partnership and as corporate equity holders. They disputed liability on the Property Agreement, and they sought to disallow the claim in full on a variety of theories.

After trial, the bankruptcy court overruled the claim objection in part, sustained it in part, and attributed a portion of the claim to the Doorman Partnership. These decisions are all consistent with the requirements of § 502(b).

Appellants had notice that the bankruptcy court would determine the amount of the claim as to the consolidated debtor, which included the Doorman Partnership. And they requested a determination relevant to partnership debt when they objected as general partners. Any misapprehension that the bankruptcy court would liquidate the claim owed by the Doorman Partnership was not based on a failure of due process. Durkin v. Benedor Corp. (In re G.I. Indus., Inc.), 204 F.3d 1276, 1280 (9th Cir. 2000) ("In other words, a bankruptcy court can only consider an objection to a claim and thus overcome the presumption of its

14

validity by examining the contract itself and the circumstances surrounding its formation.").

The bankruptcy court's standing analysis, which we find compelling, underscores this point. In the claim objection context, a chapter 7 debtor, "in its individual capacity, lacks standing to object unless it demonstrates that it would be 'injured in fact' by the allowance of the claim." Cheng v. K&S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 454 (9th Cir. BAP 2004), aff'd, 160 F. App'x 644 (9th Cir. 2005). In the case of a corporation, this includes its officers, directors, and agents. So when "the estate is insolvent, a chapter 7 debtor ordinarily lacks standing to object to proofs of claim." Wellman v. Ziino (In re Wellman), 378 B.R. 416, 2007 WL 4105275, at *1 n.5 (9th Cir. BAP 2007) (unpublished). But when "there is a sufficient possibility of a surplus to give the chapter 7 debtor a pecuniary interest or when the claim involved will not be discharged[]" the chapter 7 debtor has standing. Id.

Here, Appellants arguably had standing to object on two bases. First, as they made abundantly clear, they were general partners of the Doorman Partnership subject to the Trustee's § 723 action; any reduction in claims against the partnership would reduce any deficiency the Trustee could seek against them. Second, they had an equity interest as shareholders in the debtor corporation; if objecting to the claim created a surplus estate, they had standing.

But nothing suggests that this would be a surplus estate; Appellants point to no fact evidencing that there is even a

15

remote possibility of a surplus.[4] Accordingly, Appellants had standing to object to the claim only because they were general partners seeking to disallow a partnership claim.

Appellants' remaining arguments also are not persuasive.

They misread Rule 3001(f) when they assert that a properly filed claim is only prima facie evidence of "the **amount** of the claim, **not** the nature of the claim." Appellants' Opening Br. at 19. To the contrary, Rule 3001(f) states that a properly filed claim is "prima facie evidence of the **validity and** amount" of that claim. Fed. R. Bankr. P. Rule 3001(f) (emphasis added).

Also erroneous is their suggestion that, because neither party bore the burden of proof on the allocation issue, the bankruptcy court "should not have raised the [allocation] issue *sua sponte*." Appellants' Opening Br. at 20. Their starting premise is wrong. The bankruptcy court decided liability on a contract because Appellants objected, as partners, to a claim asserting breach of a contract. In the absence of a pretrial stipulation or other bifurcation of issues for trial, the identity of the contracting party is relevant to a breach of contract claim. So the bankruptcy court decided the matter put before it: liability on the contract.

In short, Appellants were on notice that the bankruptcy

---

[4] At oral argument before the Panel, Appellants' counsel argued that, if all of Appellants' claim objections were sustained, there would be a surplus estate. But the assertions of counsel at an appellate argument are not evidence, and the disallowance of this claim would not eliminate an alleged deficiency of more than $500,000.

16

court would determine the amount of the Doorman Property claim.[5]

**The bankruptcy court did not shift the burden of proof.** Appellants' other due process argument asserts that the bankruptcy court deprived them of due process by shifting the burden of proof in the § 723 action. In that action, the Trustee has the burden to prove that the partnership owed the debt. Appellants argue that, by deciding which entity owed the debt in the claim objection, the bankruptcy court shifted the burden of proof to Appellants.

Appellants overstate things. The bankruptcy court has not reached a final decision in the § 723 action, and it has not impermissibly shifted a burden. If Appellants disagree with the bankruptcy court's resolution of the § 723 action, they may

---

[5] We also note another issue, one that crystalized at oral argument: Which entity filed initially? Appellants proceed as if the Doorman Partnership did not file bankruptcy and was not in bankruptcy until the substantive consolidation order.

We question this conclusion. In its oral findings of fact, the bankruptcy court found as follows: "So the Debtor, Doorman Property Maintenance, is a partnership; that's been well established, and its bankruptcy case is substantively consolidated with Doorman Property Maintenance, Inc., a corporation." Oral Findings of Fact at 4:4-7. We read this as a dispositive ruling on the issue.

Appellants disagree but do not dispute the finding in their opening appellate brief. Accordingly, if our reading is the correct one, they waived any argument about it. McKay v. Ingleson, 558 F.3d 888, 891 (9th Cir. 2009).

Further, if the bankruptcy court found that the Doorman Partnership filed the initial bankruptcy petition, which as we read the finding it did, any contest on the point would be unavailing. Here, the bankruptcy court chose between two permissible views of the facts. We are not free to reach another conclusion on appeal. Anderson, 470 U.S. at 574; Elliott, 322 F.3d at 714.

17

appeal from that decision.

We acknowledge that Appellants are concerned that the claim objection order will have a collateral effect in the § 723 action. See Appellants' Reply Br. at 4. Issues related to the § 723 action, however, are not presently before us. Nor would it be appropriate for us to render an advisory opinion about the prospective effect of the claim objection order (e.g., discuss whether law of the case applies or whether all the elements of issue preclusion are satisfied). E.g., Restoration Homes, LLC v. Taniguchi, No. 15-CV-00032-WHO, 2015 WL 4734488, at *2 n.1 (N.D. Cal. Aug. 7, 2015) ("Moreover, as described below, because I do not determine what the bankruptcy order precludes, but merely clarify that it furnishes a basis for a plea of res judicata, assuming the appropriate elements are met, I do not offer an improper advisory opinion."). Appellants may argue those points at the appropriate place; this appeal is not it.[6]

That said, drawing their due process argument to its logical conclusion would mean that any decision that could have issue or claim preclusive effect in another lawsuit deprives the losing party of due process; that is not the law.[7]

---

[6] Appellants' reliance on GMAC Mortgage Corporation v. Salisbury (In re Loloee), 241 B.R. 655 (9th Cir. BAP 1999), is misplaced. They argue that it is analogous because the bankruptcy court's decision shifted the burden in the § 723 action and because § 723 liability can only be determined in an adversary proceeding. But as we note above, the bankruptcy court has not decided the § 723 action.

[7] Fed. Deposit Ins. Corp. v. Daily (In re Daily), 47 F.3d 365, 369 (9th Cir. 1995) ("It is implicit in the doctrine of (continued...)

18

In sum, when they objected to the claim, Appellants were on notice that the bankruptcy court would determine the amount of the claim. When the bankruptcy court engaged in the required liquidation of the claim, it did not impermissibly shift the burden of proof in the § 723 action — indeed, it cannot have done so, as it has not yet decided that matter.

**D.** **The bankruptcy court did not abuse its discretion when it denied Appellants' motion for reconsideration.**

Appellants claim the bankruptcy court erred in denying their reconsideration motion in two respects. We disagree.

**The bankruptcy court applied the correct standard**. The first problem, they argue, is that the bankruptcy court applied the wrong legal standard: because it raised the allocation issue sua sponte, it should have evaluated the evidence "anew" and not based on the Civil Rule 59 standard. They assert that by not doing so "the bankruptcy court specifically violated the holding of McMillan v. Jarvis, 332 F.3d 244 (4th Cir. 2003) and applied the incorrect law . . . ." Appellants' Opening Br. at 28.

But we have already concluded that Appellants were on notice that the bankruptcy court could adjudicate the amount of the claim as to the Doorman Partnership. As a result, the bankruptcy court did not sua sponte and without notice decide the matter. So it did not need to consider "anew" the newly

---

[7](...continued)
collateral estoppel that, where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding.").

19

offered evidence.

In addition, Appellants misread the record. The bankruptcy court carefully considered the evidence. It issued a nine-page memorandum decision discussing reconsideration and spent five pages addressing the "newly introduced" evidence. Admittedly, the bankruptcy court did not formally accept the evidence. But it evaluated and considered the proffered evidence; it decided that the evidence did not change its conclusion.

Finally, Appellants asked the bankruptcy court to apply the Civil Rule 59 standard. In their reconsideration motion, Appellants argued that, when a § 502(j) reconsideration motion is filed within 14 days of the decision, the Civil Rule 59 standard is appropriate. Now, on appeal, Appellants argue that a different standard should apply. Because they did not apprise the bankruptcy court of this alternate standard, they waived the issue on appeal. Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a bankruptcy court."); Orr v. Plumb, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal . . . are deemed forfeited.").

**The bankruptcy court considered the new evidence.** Appellants next contend that evidence they submitted with their reconsideration motion shows that the bankruptcy court erred; they relate the evidence and repeat the arguments from their reconsideration motion. In their reply brief, they admit that the reconsideration motion included "all the evidence they would have submitted *had* the bankruptcy court" said it would decide

20

the allocation issue. Appellants' Reply Br. at 8.

Appellants miss an important point. The bankruptcy court considered that evidence. It found it wanting; indeed, it issued a detailed memorandum decision denying Appellants' motion for reconsideration. It walked through the evidence, evaluated Appellants' arguments, and explained why neither compelled a different result. And Appellants never argue or explain in their opening brief why the bankruptcy court's analysis is flawed. As a result, they have not shown how the bankruptcy court abused its discretion.

## CONCLUSION

Based on the foregoing, we AFFIRM.